**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No: 1:25-cv-00276-WO-LPA**

CLAYTON BRADLEY WILLIAMS, III,

     Plaintiff,

  v.

PENNYMAC LOAN SERVICES, LLC,

     Defendant.

---

## PENNYMAC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff's class claims rely on the illogical premise that, over the 30-year life of a loan, loan servicers cannot provide and customers cannot agree to an additional service for a fee.

Mortgage loans generally require customers to make monthly payments at a physical address. It is up to the borrower as to how to get the payment there—first class mail, overnight mail, etc. And for as long as mortgage loans have been around, borrowers have paid for those delivery services, either with a stamp when mailing a check or through a fee to pay couriers like FedEx or UPS for faster delivery.

As technology has advanced, servicers have expanded acceptable payment methods to electronic payments. This is a benefit to both servicers and borrowers. Servicers receive the payment directly and timely with less potential for processing

errors and costs, and borrowers avoid the hassle, potential delays, and fraud risk associated with writing and mailing a check.

Just like allowing a borrower to choose to use a third-party service like FedEx or UPS for expedited payment delivery in exchange for a fee is not a deceptive or unfair debt collection practice, neither is allowing the borrower to choose to utilize a fully disclosed, optional, third-party electronic payment delivery method in exchange for a fee. Actively reading North Carolina's Debt Collection Act (**NCDCA**) or Unfair and Deceptive Trade Practices Act (**NCUDTPA**) to hold otherwise is legally infirm. Plaintiff's claims should be prejudicially dismissed.

Plaintiff's individual claims fail as well. Despite admitting he was offered and declined a loan modification offer, Plaintiff alleges Pennymac violated the NCUDTPA in servicing his loan. But his shotgun pleading makes it impossible for Pennymac to identify the alleged errors. Plaintiff's NCDCA claim, premised on alleged direct communications after Pennymac purportedly had notice Plaintiff was represented, also fails because nowhere does he allege Pennymac's communications were debt collection attempts. Dismissing these claims is required.

## II. COMPLAINT ALLEGATIONS

### A. Allegations Relevant to Class Claims.

Plaintiff entered into a loan (the "Loan") secured by a Deed

82004374;4

of Trust on property located in North Carolina. (Doc. 1 (**Compl.**) ¶ 50.) Pennymac is the Loan's servicer. (*Id.* ¶ 51.) Plaintiff alleges Pennymac charged him $6.75 in May 2024 for choosing to make his monthly payment over the phone. (*Id.* ¶ 52.) Plaintiff's Loan requires monthly payments "in the form of cash, check, money order, or other payment method accepted by Lender." (Ex. 1 (Deed of Trust) ¶ 1; Ex. 2 (Promissory Note) ¶¶ 1, 3.)[1] Loan payments are due on the first of the month and must be made at a P.O. Box or a different place if Pennymac requires. (Ex. 2 ¶¶ 3, 6.)

Pursuant to paragraph 15 of the Deed of Trust:

> **15. Loan charges. . . .**
>
> **(c) Permissibility of Fees.** In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

(Ex. 1 ¶ 15.) The Deed of Trust continues:

> **17. Governing Law; Severability; rules of Construction.** This Security Instrument is governed by federal law and the law of the State of North Carolina. [ ] Applicable

---

[1] Plaintiff's Deed of Trust and Promissory Note are attached as EXHIBIT 1 and EXHIBIT 2. Plaintiff appears to have intended to attach the Deed of Trust to the complaint, (*see* Compl. ¶ 50), so the Court may consider it in ruling on this motion. Regardless, these Loan documents are incorporated by reference into the complaint because they are referred to and relied on by Plaintiff throughout. (*See* Compl. ¶¶ 3, 5, 16, 30, 39, 50, 53, 54, 87, 96, 97.) As such, they may be considered at this dismissal stage. *See Bir v. McKesson Corp.*, No. 5:22-CV-00412-M, 2023 WL 5960640, at *2 (E.D.N.C. Sept. 13, 2023). The court may also take judicial notice of the publicly recorded (*see* Ex. 1) Deed of Trust. *See* FED. R. EVID. 201.

82004374;4

> law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract.

(*Id.* ¶ 17.)

Plaintiff alleges that Pennymac offers customers electronic payment delivery methods for a fee. (Compl. ¶¶ 32-35.) In particular, Pennymac allegedly charges borrowers a "Pay-to-Pay Fee" of up to $6.75 when borrowers choose to make a loan payment online or over the phone using a debit card. (*Id.* ¶¶ 2, 28.) With no supporting facts alleged, Plaintiff asserts that the cost for Pennymac to process these payment delivery methods is less than the amounts charged, and Pennymac improperly profits from the difference. (*Id.* ¶¶ 29, 37-39.)

Though outside the complaint's four corners, Pennymac disputes these allegations and that it charges or profits from payment delivery and processing fees. The only amount that is or could be at issue is the $6.75 fee Plaintiff paid a third party to process and deliver his mortgage payment using Plaintiff's debit card (the **Third-Party Fee**).[2] (Compl. ¶ 52.) The Third-Party Fee is clearly disclosed as an optional payment method, and it is paid

---

[2] By referencing the Third-Party Fee here, Pennymac is not asking this Court to treat its motion as one seeking summary judgment. But, it is important to address now that, despite Plaintiff's allegations otherwise, Pennymac does not charge customers any fee for optional payment delivery methods.

82004374;4

directly to the third party. No part is paid to or passed through Pennymac. If servicers are forced to absorb the costs of optional payment delivery services offered by third parties vendors, this will result in either higher lending costs or fewer choices for consumers, or both.

## B. Plaintiff's Individual Allegations.

With respect to Plaintiff's individual allegations, shortly after closing, Plaintiff claims that he realized the property was filled with mold and moved out. (Compl. ¶¶ 65, 67.) When he requested financial assistance for his mortgage payments, Pennymac allegedly told him to stop paying his mortgage so it could evaluate him for a loan modification. (*Id.* ¶¶ 68-71.) Pennymac did send him a modification offer, but it was allegedly too late. (*Id.* ¶¶ 72-76.) He claims this violated the NCUDTPA. (*Id.* ¶ 114.)

Plaintiff also accuses Pennymac of communicating with him after receiving a representation letter in violation of NCDCA § 75-55(3). (*Id.* ¶¶ 77-79, 120.)

### III. LEGAL ARGUMENT

## A. Plaintiff Fails to State an NCDCA Claim (Count I).

Plaintiff claims Pennymac's alleged "pay-to-pay" fee violates NCDCA § 75-55(2), (Compl. ¶¶ 96-98), which provides: "No debt collector shall collect or attempt to collect any debt by use of any unconscionable means. Such means include . . . (2) . . .

5

collecting or attempting to collect any interest or other charge, fee, or expense incidental to the principal debt unless legally entitled to such fee or charge." N.C. GEN. STAT. § 75-55(2).

To state an NCDCA claim, in addition to proving the specific statutory violation above, Plaintiff must establish the "generalized requirements" of: "**(1)** an unfair act **(2)** in or affecting commerce **(3)** proximately causing injury." *Reid v. Ayers*, 138 N.C. App. 261, 265 (2000) (quotations omitted).

### 1. No unfair debt collection.

The NCDCA applies only to attempts to collect the subject debt. *See* N.C. GEN. STAT. § 75-55. Whether the debt collector is engaged in debt collection is a "commonsense inquiry that evaluates the nature of the parties' relationship, the objective purpose and context of the [debt collection] communication, and whether the communication includes a demand for payment." *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) (quotations omitted).

"In the context of debt collection, [unfair] acts include the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations, and unconscionable means." *Davis Lake Cmty. Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 296 (2000) (citing N.C. GEN. STAT. §§ 75-51 to -56). Courts look for debt collection that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Allen v.*

6

*Simmons*, 99 N.C. App. 636, 643 (1990).

It is implausible that allowing borrowers to choose how they wish to deliver their monthly payments is unfair debt collection when **(1)** there is no demand that the borrower incur the fee; **(2)** there are numerous disclosed and free options available; and **(3)** Pennymac does not actually collect or receive any part of the Third-Party Fee.

In *Brown v. Loancare, LLC*, the court found: "plaintiff exercised her option to pay her mortgage either by phone or online. It is not plausible that charging a fee for an optional service, particularly when Plaintiff had alternative means of payment, is unfair or deceptive." No. 320CV00280FDWDSC, 2020 WL 7389407, at *5 (W.D.N.C. Dec. 16, 2020). The court in *Waddell v. U.S. Bank National Ass'n* agreed: "U.S. Bank's fee for an optional service that Waddell chose for her convenience is not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers)." 395 F. Supp. 3d 676, 685 (E.D.N.C. 2019).[3]

Further, in *Flores v. Collection Consultants of California*,

---

[3] *But see Custer v. Dovenmuehle Mortg. Inc.*, No. 1:24-cv-306, 2024 WL 4528187, at *4 (M.D.N.C. Oct. 18, 2024) (similar allegations were sufficient to support a claim that the fee DMI charges to pay by phone is unfair). Again, this case is distinguishable, at least in part, because Pennymac does not charge any fees for optional payment delivery methods.

82004374;4

the court held a consumer's choice to "opt in" to the alternative payment method for a disclosed fee was not a charge subject to the Fair Debt Collection Practices Act (**FDCPA**). No. SA CV 14-0771-DOC (RNBX), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015). This conclusion was "in line with the intentions of the statute" and further noted that "[d]iscouraging debt collectors from offering the additional option for a method of payment does not further the purposes of the FDCPA." *Id.*;[4] *see also Lish v. Amerihome Mortg. Co., LLC*, No. 2:20-CV-07147-JFW-JPRX, 2020 WL 6688597, at *3-4 (C.D. Cal. Nov. 10, 2020) (same).

Plaintiff does not allege any coercion, oppression, demands, or conduct against public policy. At best he alleges he chose to pay $6.75 for the option of delivering his payment by debit card. (Compl. ¶ 52.) There is no allegation Pennymac demanded payment of the debt or that he incur the fee. *See Mann v. Nat'l Asset Mgmt. Enters., Inc.*, No. 04-1304, 2005 WL 8163297, at *1-2 (C.D. Ill. Feb. 24, 2005) (option to pay by phone for a fee not debt collection); *Johnson v. Brock & Scott, PLLC*, No. 5:11-CV-474-F, 2013 WL 6058199, at *8 (E.D.N.C. Nov. 15, 2013)(NCDCA claim dismissed where debt collector did not attempt to collect the

---

[4] The NCDCA, though it uses materially different terms in places, has the same purpose as the FDCPA. *See, e.g.*, *DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 764 n.2 (M.D.N.C. 2003).

82004374;4

debt).

Plaintiff's NCDCA allegations are even more implausible because Pennymac is not charging, passing through, or collecting the subject fee at all. Courts considering these facts find no improper debt collection. *See, e.g.*, *Shami v. Nat'l Enter. Sys.*, 914 F. Supp. 2d 353, 359 (E.D.N.Y. 2012) (summary judgment entered for defendant where plaintiff failed to establish the defendant debt collector was collecting the disputed fee); *see also Lee v. Main Accts., Inc.*, 125 F.3d 855 (6th Cir. 1997) (unpublished table decision)(pass through of a charge paid to a third-party credit card service provider did not trigger the FDCPA, was not an attempt to collect an extra fee, and was not an unconscionable or deceptive debt collection practice).

**2.   Optional fee is not incidental to the principal debt.**

As is relevant here, NCDCA § 75-55(2) limits its scope to collecting any "charge, fee, or expense *incidental to* the principal debt . . . ." N.C. GEN. STAT. § 75-55(2) (emphasis added).

Fees for optional payment delivery methods like the one Plaintiff paid are not "incidental to" the principal debt. Incidental means "being likely to ensue as a chance or minor consequence." "Incidental," *Merriam-Webster.com* (available at *https://www.merriam-webster.com/dictionary/incidental* (last accessed June 9, 2025)).

9

Rather than being "likely to ensue" as a consequence of the Loan, the Third-Party Fee is charged as part of a separate transaction agreed to by the borrower in exchange for an added, optional delivery service. Such fees are not incidental to the debt. *See, e.g.*, *Mirabadi v. Select Portfolio Servicing, Inc.*, No. CV 23-06809 PSG (SP), 2024 WL 1151673, at *6 (C.D. Cal. Feb. 13, 2024), *aff'd,* No. 24-1487, 2025 WL 485518 (9th Cir. Feb. 13, 2025) (optional EZ pay fees were not incidental to the debt); *Lish*, 2020 WL 6688597, at *3-4 (convenience fee not incidental to the debt because plaintiff chose to take advantage of the option and incur the charge); *Est. of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1265 (S.D. Fla. 2020) ("The convenience fees are . . . no[t] incidental to, the transferred debt.") *partially overruled on other grounds by Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278 (11th Cir. 2025).

### 3. The disputed fee is legally allowed.

Even if Plaintiff could establish that allowing borrowers the option to deliver their payments electronically for a disclosed fee is unfair debt collection of an amount incidental to the debt, Plaintiff's complaint should be dismissed because he cannot meet the "legally entitled", N.C. GEN. STAT. § 75-55(2), element.

Acknowledging that over the 30-year life of a mortgage loan there may be fees and charges not specifically mentioned in the

10

82004374;4

original loan documents, the Deed of Trust allows Pennymac to charge additional fees unless "expressly prohibited" by the Deed of Trust or "applicable law." (Ex. 1 ¶ 15.) It further states that applicable law, i.e., the law of North Carolina, may "expressly or implicitly allow the parties to agree by contract." (*Id.* ¶ 17.)

There is no disputing the Deed of Trust did not prohibit the parties from entering into a separate contract for the delivery/processing of payments electronically. *See Matchett v. BSI Fin. Servs.*, No. 21-4142, 2023 WL 4678683, at *4 (10th Cir. July 21, 2023) (analyzing a similar contract; the "mortgage documents do not prohibit Defendant from later offering an optional service for an added price"). North Carolina law also does not expressly prohibit the fee. To the contrary, North Carolina permits contracting parties to enter into a separate agreement for services not covered by the original contract. *See Hanover Co. v. Twisdale*, 256 S.E.2d 840, 843 (N.C. 1979) (subsequent oral agreements for additional labor, equipment, and materials not covered by the original written contract enforceable and admissible). The complaint allegations support Plaintiff agreed to the optional delivery service and associated fee. (Compl. ¶ 52.)

Having entered into a separate contract, the Third-Party Fee was "legally" permitted. Plaintiff's claims based on this fee fail. *See, e.g.*, *Meintzinger v. Sortis Holdings, Inc.*, No. 18-CV-2042

82004374;4

(BMC), 2019 WL 1471338, at *3 (E.D.N.Y. Apr. 3, 2019) (pay-by-phone service charge permissible when debtor knows of the charge and has the option to avoid it by paying bill in the usual way).

**4.  The 4th Circuit's *Alexander* decision should not be applied here.**

Plaintiff may attempt to rely on the 4th Circuit's *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022), decision to support his claims. But *Alexander* is neither binding nor persuasive here.

First, *Alexander* involved the Maryland Consumer Debt Collection Act (**MCDCA**) and the Maryland Consumer Protection Act. *Alexander*, 23 F.4th at 372. The MCDCA incorporates the FDCPA, which applies to "*any* amount, whether or not that amount is incidental to the principal obligation." *Id.* at 376–77 (emphasis in original)*.* The NCDCA, by contrast, only applies to fees incidental to the principal obligation. N.C. GEN. STAT. § 75-55(2). The FDCPA's broader prohibition as to "any amount" was a material consideration to the *Alexander* court's conclusion. *Alexander*, 23 F.4th at 377.

Second, the *Alexander* court skipped over whether the fee was charged in connection with a debt collection attempt. This Court should not bypass that consideration here, particularly where the NCDCA's debt collection definition is more restrictive than FDCPA's definition. *See Johnson*, 2013 WL 6058199, at *8 (NCDCA "contemplates a debt collector 'collect[ing] or attempt[ing] to

12

82004374;4

collect' a debt," which language "is more narrow than" FDCPA's debt collection language).[5]

## B.  Plaintiff Fails to State an NCUDTPA Claim (Count II).

For the same reasons Plaintiff's NCDCA claim fails, so too does his NCUDTPA claim. *See Waddell*, 395 F. Supp. 3d at 685 ("The NCDCA supplants the UDTPA 'in the debt collection context.'"). But Plaintiff further fails to allege an NCUDTPA claim because the alleged practice of charging customers fully disclosed fees for optional payment delivery methods is not unfair or deceptive, and there are no substantial aggravating circumstances elevating his claim from a simple breach of contract.

To establish a claim under the NCUDTPA, a plaintiff must show, "**(1)** [the] defendant committed an unfair or deceptive act or practice, **(2)** the action in question was in or affecting commerce, and **(3)** the act proximately caused injury to the plaintiff." *Waddell*, 395 F. Supp. 3d at 684.

### 1.  Pennymac did not engage in unfair or deceptive conduct.

Plaintiff asserts Pennymac had to inform him about Pennymac's purported convenience fee internal costs and that charging a fee was not allowed under the Deed of Trust. (Compl. ¶ 102.) The law simply does not support these claims.

---

[5] The *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278 (11th Cir. 2025), decision is distinguishable on these bases too.

82004374;4

First, Pennymac does not charge the Third-Party Fee. Second, loan servicers have no duty to inform borrowers of the actual cost of operations. 12 C.F.R. § 1024.36(f)(1)(ii). Third, and as discussed *supra,* Section III.A.3., the Deed of Trust does allow these charges. Fees for optional services are not unfair or deceptive. *See Waddell*, 395 F. Supp. 3d at 685 ("U.S. Bank's fee for an optional service that Waddell chose for her convenience is not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers)."); *Brown*, 2020 WL 7389407, at *5 ("It is not plausible that charging a fee for an optional service, particularly when Plaintiff had alternative means of payment, is unfair or deceptive.").

## 2. There are no substantial aggravating factors.

A breach of contract, by itself, is not an NCUDTPA violation. *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992). A plaintiff must also show "substantial aggravating circumstances attending the breach to recover under the Act." *Id.* In fact, courts routinely dismiss attempts to transform basic contract breaches into NCUDTPA claims. *See, e.g.*, *Brown*, 2020 WL 7389407, at *5; *Waddell*, 395 F. Supp. 3d at 685; *M.J. Woods, Inc. v. Little Rapids Corp.*, No. 116CV00356MOCDLH, 2016 WL 7494469, at *3 (W.D.N.C. Dec. 30, 2016).

14

82004374;4

Plaintiff's NCUDTPA claim is based directly on the charging of fees allegedly "unauthorized" by the Deed of Trust. (Compl. ¶ 104 ("PennyMac's use of its exclusive position as the mortgage servicer for captive borrowers . . . to impose Pay-to-Pay Fees to which it is neither entitled by law to add nor expressly authorized by the Uniform Mortgages constitutes a 'unfair' business practice . . . ."), ¶ 109.) Simply stating the disputed fee is "immoral, unethical, oppressive, or unscrupulous" is insufficient to allege substantial aggravating factors required for an NCUDTPA claim. *See Lambert v. First Horizon Bank*, No. 3:19-CV-581-RJC-DCK, 2021 WL 3260073, at *9 (W.D.N.C. June 29, 2021), *report and recommendation adopted,* No. 3:19-CV-581-RJC-DCK, 2021 WL 3234624 (W.D.N.C. July 29, 2021).

The conclusory assertions that the disputed fee gives Pennymac an unfair competitive advantage that could lead to "a race to the bottom" and that Pennymac would still offer consumers the delivery option even if it could not charge for it are simply too speculative to be afforded any weight.[6] *See Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) ("[D]etermining whether a complaint

---

[6] They are also untrue. Pennymac cannot operationally process and deliver debit card payments. If Pennymac is required to absorb the cost to build out the infrastructure to support this optional product, it may be forced to discontinue this option that its customers clearly want and are willing to pay for, just as they pay for FedEx or UPS.

82004374;4

states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Also, "conjectural or hypothetical" claims about a potential for harm at an unspecified time in the future—as Plaintiff suggests will happen here—does not allege an "injury in fact." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court.").

## C. Plaintiff Fails to State an NCUDTPA Claim (Count III.A.).[7]

Plaintiff bases his individual NCUDTPA claim on alleged SAFE Act violations, specifically that Pennymac allegedly violated: **(1)** § 45-93, which provides a "servicer shall make reasonable attempts to comply with a borrower's request for information about the home loan account and to respond to any dispute initiated by the borrower about the loan account . . . ;" **(2)** § 53-244.110(3), which

---

[7] Plaintiff's two Count IIIs are referenced as III.A. and III.B.

82004374;4

requires servicers "[a]ct with reasonable skill, care, and diligence;" **(3)** § 53-224.110(7), which requires a servicer, "[i]n the event of a delinquency" to "act in good faith . . . to attempt a resolution or workout to the delinquency;" **(4)** § 53-244.111(8), which prohibits servicers from "engag[ing] in any transaction, practice, or course of business that is not in good faith or fair dealing . . . in connection with" loan servicing; and **(5)** § 53-244.111(14), which requires loan servicers to "comply with applicable State and federal laws and regulations related to mortgage lending or mortgage servicing."

Plaintiff fails to plead enough facts to plausibly allege violative conduct to state a claim for relief under *Twombly*: "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" 550 U.S. at 555 (quotations omitted). "While a plaintiff does not have to prove his or her claim in the complaint, the complaint does have to include sufficient factual allegations to make a claim plausible." *Edwards v. JPMorgan Chase Bank, N.A.*, No. 1:20-CV-128, 2020 WL 1814423, at *6 (M.D.N.C. Apr. 9, 2020).

Plaintiff vaguely alleges Pennymac violated five basic regulatory statutes and incorporates by reference "all prior and subsequent paragraphs." (Compl. ¶ 112.) This is an improper

17

shotgun pleading that violates Federal Civil Procedure Rule 8. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). Pennymac cannot be expected to scour the complaint for allegations that may pertain to these alleged violations.

Going further, the SAFE Act does not provide borrowers with a private right of action. *Campbell v. CitiMortgage, Inc.*, No. 1:11CV1017, 2014 WL 4924251, at *11 (M.D.N.C. Sept. 30, 2014), *report and recommendation adopted,* No. 1:11CV1017, 2015 WL 127818 (M.D.N.C. Jan. 8, 2015).

And, while the violation of a regulatory statute designed to protect the public *may* constitute an unfair or deceptive practice, Plaintiff has not shown the statutes he raised "specifically define[] and proscribe[] conduct which is unfair or deceptive within the meaning of [NCUDTPA]" or otherwise satisfy the three elements of an NCUDTPA claim. *Noble v. Hooters of Greenville (NC), LLC*, 199 N.C. App. 163, 170 (2009) (citing N.C. GEN. STAT. § 66-100(e)).

Not one of the statutes Plaintiff cites specifically proscribe unfair or deceptive conduct as defined by the NCUDTPA or otherwise satisfy the NCUDTPA claim elements. For example, violations of §§ 45-93 (requiring servicers to comply with information requests) or 53-244.110 (requiring servicers to "[a]ct

with reasonable skill, care, and diligence") do not "possess[] the tendency or capacity to mislead, or create[] the likelihood of deception." This count must be dismissed.

**D.  Plaintiff Fails to State an NCDCA Claim (Count III.B.).**

Plaintiff claims Pennymac violated the NCDCA § 75-55(3) when it continued communicating with him after his attorney sent a representation letter. (Compl. ¶¶ 118-119.) To prevail, Plaintiff must establish Pennymac communicated with him in an attempt to collect a debt after being notified of attorney representation. N.C. GEN. STAT.§ 75-55; *see also Johnson*, 2013 WL 6058199, at *8 (summary judgment for plaintiff on NCDCA claim denied where defendant's conduct cannot reasonably be described as debt collection).

Plaintiff alleges no communications that were "an attempt to collect any debt." At best he says that, after he reached out to Pennymac about financial assistance, Pennymac sent him a modification offer. (Compl. ¶¶ 69, 77.) But "[i]t is perfectly proper for a mortgage servicer during the process of servicing a mortgage to offer a consumer options for loss mitigation." *Forgues v. Select Portfolio Servicing, Inc.*, 690 F. App'x 896, 900 (6th Cir. 2017). Plaintiff has failed to plead a § 75-55(3) claim.

82004374;4

## IV. CONCLUSION

Plaintiff used a recycled complaint[8] to sue Pennymac over purported convenience fees Pennymac does not charge. But offering an optional payment delivery method for a fee is not unfair or deceptive debt collection in any event. The fees are separate, allowed transactions not incidental to the underlying debt. And calling them unfair or deceptive will only result in fewer options or increased borrowing costs for consumers, or both.

Pennymac respectfully requests the complaint be dismissed as outlined above.

Respectfully submitted this 27th day of June, 2025.

**AKERMAN LLP**

/s/ *Celia C. Falzone*
Celia C. Falzone (Pro Hac Vice)
Fla. Bar No. 0016439
E-Mail: celia.falzone@akerman.com;
E-Mail: emory.woodard@akerman.com
AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
T: (904) 798-3700; F: (904) 798-3730

*-and-*

Marc J. Gottlieb, Esq. (Pro Hac Vice)
Florida Bar No. 827819

---

[8] The complaint contains identical "pay-to-pay" fee allegations as raised in *Custer v. Dovenmuehle Mortg., Inc.*, No. 1:24-CV-306 (M.D.N.C. Apr. 10, 2024). It even continues to reference Dovenmuehle Mortgage ("DMI") and Custer. (Compl. ¶¶ 3, 36, 108, 110 & p. 23.)

82004374;4

AKERMAN LLP
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301-2999
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
E-Mail: marc.gottlieb@akerman.com
E-Mail: joyce.gutierrez@akerman.com

*-and-*

Michael Newell, Esq.
Florida Bar No. 1049438
Three Brickell City Centre
98 Southeast 7th Street, Suite 1100
Miami, Florida 33131
Telephone: (305)374-5600
Facsimile: (305)374-5095
michael.newell@akerman.com
elena.hamilton@akerman.com

*-and-*

*/s/ Donald R. Pocock*
Donald R. Pocock, Esq.
NC Bar No. 29393
Akerman LLP
100 North Main Street, Suite 2425
Winston-Salem, NC 27101
Telephone: 336 296 7100
Fax: 336 296 7026
donald.pocock@akerman.com
*Counsel for Pennymac Loan Services, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that this brief contains 4,764 words (not including material that may be excluded), as counted by the word-count feature in the word-processing software.

*/s/Celia C. Falzone*
Celia C. Falzone

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served the following counsel of record via the Court's CM/ECF system:

Katherine Marie Aizpuru
Robin Bleiweis
Tycko & Zavareei LLP
kaizpuru@tzlegal.com
rbleiweis@tzlegal.com
Benjamin M. Sheridan
Klein & Sheridan, LC
ben@kleinsheridan.com
*Counsel for Plaintiff*

This 27th day of June, 2025.

*/s/ Celia C. Falzone*
Celia C. Falzone

82004374;4