**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No: 1:25-cv-00276-WO-LPA**

CLAYTON BRADLEY WILLIAMS, III,

     Plaintiff,

  v.

PENNYMAC LOAN SERVICES, LLC,

     Defendant.

**PENNYMAC'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff's complaint amendments do not save his claims. His class claims still rely on the illogical premise that, over the 30-year life of a loan, loan servicers cannot provide and customers cannot agree to an additional service for a fee.

Mortgage loans generally require customers to make monthly payments at a physical address. It is up to the borrower as to how to get the payment there—first class mail, overnight mail, etc. And for as long as mortgage loans have been around, borrowers have paid for those delivery services. For example, paying for a stamp or courier fees like FedEx or UPS for faster delivery.

As technology has advanced, servicers have expanded acceptable payment methods to electronic payments. This is a benefit to both servicers and borrowers. Servicers receive the

82240697;2

payment directly and timely with less potential for processing errors and costs, and borrowers avoid the hassle, potential delays, and fraud risk associated with writing and mailing a check.

Just like allowing a borrower's choice to use a third-party service like FedEx or UPS for payment delivery in exchange for a fee is not a deceptive or unfair debt collection practice, neither is allowing a borrower's choice to utilize a fully disclosed, optional, and, in this case, third-party electronic payment delivery method in exchange for a fee. Reading North Carolina's Debt Collection Act (**NCDCA**) or Unfair and Deceptive Trade Practices Act (**NCUDTPA**) to hold otherwise is legally infirm. Plaintiff's putative class claims should be prejudicially dismissed.

Plaintiff's individual claims—which are improper shotgun pleadings that incorporate all prior allegations regardless of their applicability—fail as well. Despite admitting he was offered and declined a loan modification, Plaintiff alleges Pennymac violated the NCUDTPA in servicing his loan. But he does not state a violation of any enumerated statute. Plaintiff's NCDCA claim, premised on alleged direct communications after Pennymac purportedly had notice Plaintiff was represented, also fails because the alleged communications were not debt collection attempts. Dismissing these claims is required.

82240697;2

## II. Complaint Allegations

### A.   Allegations Relevant to Class Claims.

Plaintiff entered into a loan (the "Loan") secured by a Deed of Trust on property located in North Carolina (the "Deed of Trust"). (Doc. 15 (**Am. Compl.**) ¶ 50.) Pennymac is the Loan's servicer. (*Id.* ¶ 51.)

Plaintiff's Loan requires monthly payments "in the form of cash, check, money order, or other payment method accepted by Lender." (Ex. 1 (Deed of Trust) ¶ 1; Ex. 2 (Promissory Note) ¶¶ 1, 3.)[1] Loan payments are due on the first of the month and must be made at a P.O. Box or a different place if Pennymac requires. (Ex. 2 ¶¶ 3, 6.)

Pursuant to paragraph 15 of the Deed of Trust:

> **15. Loan charges. . . .**
>
> **(c) Permissibility of Fees.** In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

---

[1] Plaintiff's Deed of Trust and Promissory Note are attached as Exhibit 1 and Exhibit 2. Plaintiff attached the incorrect deed of trust to the complaint, (*see* Am. Compl. Ex. B), so the Court may consider the correct one in ruling on this motion. These Loan documents are also incorporated by reference into the complaint because they are referred to and relied on by Plaintiff throughout. (*See* Am. Compl. ¶¶ 3, 5, 16, 30, 50, 53, 54, 87, 96, 97.) As such, they may be considered at this dismissal stage. *See Bir v. McKesson Corp.*, No. 5:22-CV-00412-M, 2023 WL 5960640, at *2 (E.D.N.C. Sept. 13, 2023). The court may also take judicial notice of the publicly recorded (*see* Ex. 1) Deed of Trust. *See* Fed. R. Evid. 201.

82240697;2

(Ex. 1 ¶ 15.) The Deed of Trust continues:

> **17. Governing Law; Severability; rules of Construction.**
> This Security Instrument is governed by federal law and
> the law of the State of North Carolina. [ ] Applicable
> law might explicitly or implicitly allow the parties to
> agree by contract or it might be silent, but such silence
> should not be construed as a prohibition against
> agreement by contract.

(*Id.* ¶ 17.)

Plaintiff alleges Pennymac or Pennymac's agents charged him
a $6.75 fee in May 2024 when he chose to make his monthly payment
over the phone. (Am. Compl. ¶ 52.)

Despite allegedly paying only this singular fee, Plaintiff
makes vague allegations that Pennymac and its agents "have" charged
borrowers $6.75 for using an "automated payment method" and "up to
$15.00 per transaction when speaking to a representative." (*Id.*
¶ 28.) With no supporting facts alleged, Plaintiff asserts the
cost for Pennymac and its purported agents to process these payment
delivery methods is less than the amounts charged, and Pennymac
improperly profits from the difference. (*Id.* ¶¶ 29, 37-39.)

In response to Plaintiff's initial complaint, Pennymac
explained it does not charge or profit from any payment delivery
or processing fees. (Doc. 14 at 4.) And, despite Plaintiff's
continued, incorrect allegations otherwise (Am. Compl. ¶ 28), the
fact still remains that the only amount that is or could be at
issue is the $6.75 fee Plaintiff paid an independent third party

4

to process and deliver his mortgage payment to Pennymac using Plaintiff's debit card (the **Third-Party Fee**).[2] The Third-Party Fee is clearly disclosed as an optional payment method charged by and paid directly to the third party. No part is paid to or passed through Pennymac. These facts are case dispositive. (*See* Doc. 14 at 9.)

Apparently in recognition of this fact, Plaintiff's amendment substituted "Pennymac" with "Pennymac and its agents" throughout. (*Compare* Doc. 1 ¶¶ 2, 3, 28-31, 40, 52-54, 63, 86, 87, 95-97, 101-102 *with* Am. Compl. ¶¶ 2, 3, 28-31, 36, 41, 52-54, 63, 84, 87, 95-97, 101-102.) But there are no allegations—because there could be none—supporting any agency or that a Pennymac agent charged the disputed fees.

**B.    Plaintiff's Individual Allegations.**

As to Plaintiff's individual allegations, shortly after closing, Plaintiff claims that he realized the property was filled with mold and moved out. (Am. Compl. ¶¶ 65, 67.) When he requested financial assistance, Pennymac allegedly told him to stop paying his mortgage so it could evaluate him for a loan modification. (*Id.* ¶¶ 69-72.) Pennymac at first declined to offer a modification

---

[2] By correcting the facts again, Pennymac is not asking this Court to treat its motion as one seeking summary judgment. But, it is important to address now that, despite Plaintiff's allegations otherwise, Pennymac does not charge customers any fee for optional payment delivery methods.

82240697;2

because the property was unoccupied, but it did later send him a modification offer. (*Id.* ¶¶ 73, 75.) Plaintiff claims the offer came too late, violating the NCUDTPA. (*Id.* ¶¶ 76, 113-115.)

Plaintiff also accuses Pennymac of communicating with him after receiving a representation letter in violation of NCDCA § 75-55(3). (*Id.* ¶¶ 77-79, 120.)

### III. LEGAL ARGUMENT

**A.   Plaintiff Fails to State an NCDCA Claim (Count I).**

Plaintiff claims Pennymac's alleged "pay-to-pay" fee violates NCDCA § 75-55(2), (Am. Compl. ¶¶ 95-97), which provides: "No debt collector shall collect or attempt to collect any debt by use of any unconscionable means. Such means include . . . (2) . . . collecting or attempting to collect any interest or other charge, fee, or expense incidental to the principal debt unless legally entitled to such fee or charge." N.C. GEN. STAT. § 75-55(2).

To state an NCDCA claim, in addition to proving the specific statutory violation above, Plaintiff must establish the "generalized requirements" of: "**(1)** an unfair act **(2)** in or affecting commerce **(3)** proximately causing injury." *Reid v. Ayers*, 138 N.C. App. 261, 265 (2000) (quotations omitted).

**1.   No unfair debt collection.**

The NCDCA applies only to attempts to collect the subject debt. *See* N.C. GEN. STAT. § 75-55. Whether the debt collector is

82240697;2

engaged in debt collection is a "commonsense inquiry that evaluates the nature of the parties' relationship, the objective purpose and context of the [debt collection] communication, and whether the communication includes a demand for payment." *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) (quotations omitted).

"In the context of debt collection, [unfair] acts include the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations, and unconscionable means." *Davis Lake Cmty. Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 296 (2000) (citing N.C. GEN. STAT. §§ 75-51 to -56). Courts look for debt collection that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Allen v. Simmons*, 99 N.C. App. 636, 643 (1990).

It is implausible that allowing borrowers to choose how they wish to deliver their monthly payments is unfair debt collection when **(1)** there is no demand that the borrower choose a particular payment method or incur the fee; **(2)** there are numerous disclosed and free options available; and **(3)** Pennymac does not actually collect or receive any part of the Third-Party Fee.

In *Brown v. Loancare, LLC*, the court found: "plaintiff exercised her option to pay her mortgage either by phone or online. It is not plausible that charging a fee for an optional service, particularly when Plaintiff had alternative means of payment, is

82240697;2

unfair or deceptive." No. 320CV00280FDWDSC, 2020 WL 7389407, at *5 (W.D.N.C. Dec. 16, 2020). The court in *Waddell v. U.S. Bank N.A.*, agreed: "U.S. Bank's fee for an optional service that Waddell chose for her convenience is not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers)." 395 F. Supp. 3d 676, 685 (E.D.N.C. 2019).[3]

Further, in *Flores v. Collection Consultants of California*, the court held a consumer's choice to "opt in" to the alternative payment method for a disclosed fee was not a charge subject to the Fair Debt Collection Practices Act (**FDCPA**). No. SA CV 14-0771-DOC (RNBX), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015). This conclusion was "in line with the intentions of the statute;" "[d]iscouraging debt collectors from offering the additional option for a method of payment does not further the purposes of the FDCPA." *Id.;*[4] *see also Lish v. Amerihome Mortg. Co., LLC*, No. 2:20-CV-07147-JFW-JPRX, 2020 WL 6688597, at *3-4 (C.D. Cal. Nov. 10, 2020) (same).

---

[3] *But see Custer v. Dovenmuehle Mortg. Inc.*, No. 1:24-cv-306, 2024 WL 4528187, at *4 (M.D.N.C. Oct. 18, 2024) (similar allegations were sufficient to support a claim that the fee DMI charges to pay by phone is unfair). This case is distinguishable, at least in part, because Pennymac does not charge any fees for optional payment delivery methods.

[4] The NCDCA, though it uses materially different terms in places, has the same purpose as the FDCPA. *See, e.g.*, *DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 764 n.2 (M.D.N.C. 2003).

8

Plaintiff does not allege any coercion, oppression, demands, or conduct against public policy. At most, he alleges he chose to pay $6.75 for the option of delivering his payment by debit card. (Am. Compl. ¶ 52.) There is no allegation Pennymac demanded payment of the debt or that Plaintiff incur the fee to repay the debt. With no debt collection, dismissal is appropriate. *See Mann v. Nat'l Asset Mgmt. Enters., Inc.*, No. 04-1304, 2005 WL 8163297, at *1-2 (C.D. Ill. Feb. 24, 2005) (option to pay by phone for a fee not debt collection); *Johnson v. Brock & Scott, PLLC*, No. 5:11-CV-474-F, 2013 WL 6058199, at *8 (E.D.N.C. Nov. 15, 2013)(NCDCA claim dismissed where debt collector did not engage in debt collection).

Plaintiff's NCDCA allegations are even more implausible because Pennymac is not charging, passing through, or collecting the subject fee at all. (*See infra* at 4-5.) Courts considering these facts find no improper debt collection. *See, e.g.*, *Shami v. Nat'l Enter. Sys.*, 914 F. Supp. 2d 353, 359 (E.D.N.Y. 2012) (summary judgment entered for defendant where plaintiff failed to establish the defendant debt collector was collecting the disputed fee); *see also Lee v. Main Accts., Inc.*, 125 F.3d 855 (6th Cir. 1997) (unpublished table decision)(pass through of a charge paid to a third-party credit card service provider did not trigger the FDCPA, was not an attempt to collect an extra fee, and was not an

82240697;2

unconscionable or deceptive debt collection practice).

Effectively conceding this fact, Plaintiff attempts to avoid it by alleging Pennymac "or its agents" charge the disputed fees. (Am. Compl. ¶¶ 2, 3, 28-31, 36, 41, 52-54, 63, 84, 95-97.) However, not a single allegation supports a Pennymac agent charges any fee.

"There are two essential ingredients in the principal-agent relationship: **(1)** authority, either express or implied, of the agent to act for the principal, and **(2)** the principal's control over the agent." *Holcomb v. Colonial Assocs.*, L.L.C., 358 N.C. 501, 509, 597 S.E.2d 710, 716 (2004).

Plaintiff does not plead any facts supporting a Pennymac agent acted at all or Pennymac controls any alleged agent activity. *(See generally* Am. Compl.) The Court should not accept this bald legal conclusion as true. *See Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009)(dismissing plaintiff's claims based on theories of agency as insufficiently pled and conclusory); *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### 2. **Optional fee is not incidental to the principal debt.**

As is relevant here, NCDCA § 75-55(2) limits its scope to

collecting any "charge, fee, or expense *incidental to* the principal debt . . . ." N.C. GEN. STAT. § 75-55(2) (emphasis added). Fees for optional payment delivery methods like the one Plaintiff paid are not "incidental to" the principal debt. Incidental means "being likely to ensue as a chance or minor consequence." "Incidental," *Merriam-Webster.com* (available at *https://www.merriam-webster.com/dictionary/incidental* (last accessed June 9, 2025)).

Rather than being "likely to ensue" as a consequence of the Loan, the Third-Party Fee is a voluntary fee paid by Plaintiff directly to the third party as part of a separate transaction agreed to by Plaintiff in exchange for an added, optional delivery service. Such fees are not incidental to the debt. *See, e.g.*, *Mirabadi v. Select Portfolio Servicing, Inc.*, No. CV 23-06809 PSG (SP), 2024 WL 1151673, at *6 (C.D. Cal. Feb. 13, 2024), *aff'd,* No. 24-1487, 2025 WL 485518 (9th Cir. Feb. 13, 2025) (optional EZ pay fees were not incidental to the debt); *Lish*, 2020 WL 6688597, at *3-4 (convenience fee not incidental to the debt because plaintiff chose to take advantage of the option and incur the charge); *Est. of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1265 (S.D. Fla. 2020) ("The convenience fees are . . . no[t] incidental to, the transferred debt.") *partially overruled on other grounds by Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278 (11th Cir. 2025).

11

### 3. The disputed fee is legally allowed.

Even if Plaintiff could establish that allowing borrowers the option to deliver their payments electronically for a disclosed fee is unfair debt collection of an amount incidental to the debt, Plaintiff's complaint should be dismissed because he cannot meet the "legally entitled" element of § 75-55(2), N.C. GEN. STAT.

Acknowledging that over the 30-year life of a mortgage loan there may be fees and charges not specifically mentioned in the original loan documents, the Deed of Trust allows Pennymac to charge additional fees unless "expressly prohibited" by the Deed of Trust or "applicable law." (Ex. 1 ¶ 15.) It further states that applicable law, i.e., the law of North Carolina, may "expressly or implicitly allow the parties to agree by contract." (*Id.* ¶ 17.)

There is no disputing the Deed of Trust did not prohibit the parties from entering into a separate contract for the delivery/processing of payments electronically. *See Matchett v. BSI Fin. Servs.*, No. 21-4142, 2023 WL 4678683, at *4 (10th Cir. July 21, 2023) (analyzing a similar contract; the "mortgage documents do not prohibit Defendant from later offering an optional service for an added price").

North Carolina law also does not expressly prohibit the fee. To the contrary, North Carolina permits contracting parties to enter into a separate agreement for services not covered by the

82240697;2

original contract. *See Hanover Co. v. Twisdale*, 256 S.E.2d 840, 843 (N.C. 1979) (subsequent oral agreements for additional labor, equipment, and materials not covered by the original written contract enforceable and admissible). The complaint allegations support that Plaintiff agreed to the optional delivery service and associated fee. (Am. Compl. ¶ 52.)

Having entered into a separate contract, Pennymac (or in this case the third party) was legally entitled to charge the Third-Party Fee for the requested service. Plaintiff's claims based on this fee fail. *See Meintzinger v. Sortis Holdings, Inc.*, No. 18-CV-2042 (BMC), 2019 WL 1471338, at *3 (E.D.N.Y. Apr. 3, 2019) (pay-by-phone service charge permissible when debtor knows of the charge and has the option to avoid it by paying bill in the usual way).

### 4. The 4th Circuit's *Alexander* decision should not be applied here.

Plaintiff may attempt to rely on the 4th Circuit's *Alexander v. Carrington Mortgage Services, LLC*, 23 F.4th 370 (4th Cir. 2022), decision to support his claims. But *Alexander* is neither binding nor persuasive here.

First, *Alexander* involved the Maryland Consumer Debt Collection Act (**MCDCA**) and the Maryland Consumer Protection Act. *Alexander*, 23 F.4th at 372. The MCDCA incorporates the FDCPA, which applies to "*any* amount, whether or not that amount is incidental to the principal obligation." *Id.* at 376–77 (emphasis in original).

82240697;2

The NCDCA, by contrast, only applies to fees incidental to the principal obligation. N.C. GEN. STAT. § 75-55(2). The FDCPA's broader prohibition as to "any amount" was a material consideration to the *Alexander* court's conclusion. *Alexander*, 23 F.4th at 377.

Second, FDCPA § 1692f(1) applies to "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The NCDCA requires only that the debt collector be "legally entitled" to the fee. N.C. GEN. STAT. § 75-55(2). The fee does not need to be expressly authorized by the underlying Loan documents.

Third, the *Alexander* court skipped over whether the fee was charged in connection with a debt collection attempt. This Court should not bypass that consideration here, particularly where the NCDCA's debt collection definition is more restrictive than the FDCPA's definition. *See Johnson*, 2013 WL 6058199, at *8 (NCDCA "contemplates a debt collector 'collect[ing] or attempt[ing] to collect' a debt," which language "is more narrow than" FDCPA's debt collection language).[5]

## B. Plaintiff Fails to State an NCUDTPA Claim (Count II).

For the same reasons Plaintiff's NCDCA claim fails, so too does his NCUDTPA claim. *See Waddell*, 395 F. Supp. 3d at 685 ("The

---

[5] The *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278 (11th Cir. 2025), decision is distinguishable on these bases too.

14

NCDCA supplants the UDTPA 'in the debt collection context.'"). But Plaintiff further fails to allege an NCUDTPA claim because the alleged practice of charging customers fully disclosed fees for optional payment delivery methods is not unfair or deceptive, and there are no substantial aggravating circumstances elevating his claim from a simple breach of contract.

To establish a claim under the NCUDTPA, a plaintiff must show, "**(1)** [the] defendant committed an unfair or deceptive act or practice, **(2)** the action in question was in or affecting commerce, and **(3)** the act proximately caused injury to the plaintiff." *Waddell*, 395 F. Supp. 3d at 684.

### 1. Pennymac did not engage in unfair or deceptive conduct.

Plaintiff asserts Pennymac had to inform him about Pennymac's purported convenience fee internal costs and that charging a fee was not allowed under the Deed of Trust. (Am. Compl. ¶ 102.) The law simply does not support these claims.

First, Pennymac does not charge the Third-Party Fee. Second, loan servicers have no duty to inform borrowers of the actual cost of operations. 12 C.F.R. § 1024.36(f)(1)(ii). Third, and as discussed *supra,* Section III.A.3., the Deed of Trust does allow these charges. Fees for optional services are not unfair or deceptive. *See Waddell*, 395 F. Supp. 3d at 685 ("U.S. Bank's fee for an optional service that Waddell chose for her convenience is

82240697;2

not plausibly deceptive (i.e., capable of or tending to deceive) or unfair (i.e., immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers)."); *Brown*, 2020 WL 7389407, at *5 ("It is not plausible that charging a fee for an optional service, particularly when Plaintiff had alternative means of payment, is unfair or deceptive.").

### 2. There are no substantial aggravating factors.

A breach of contract, by itself, is not an NCUDTPA violation. *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992). A plaintiff must also show "substantial aggravating circumstances attending the breach to recover under the Act." *Id.* In fact, courts routinely dismiss attempts to transform basic contract breaches into NCUDTPA claims. *See, e.g.*, *Brown*, 2020 WL 7389407, at *5; *Waddell*, 395 F. Supp. 3d at 685; *M.J. Woods, Inc. v. Little Rapids Corp.*, No. 116CV00356MOCDLH, 2016 WL 7494469, at *3 (W.D.N.C. Dec. 30, 2016).

Plaintiff's NCUDTPA claim is based directly on the charging of fees allegedly "unauthorized" by the Deed of Trust. (Am. Compl. ¶ 104 ("PennyMac's use of its exclusive position as the mortgage servicer for captive borrowers . . . to impose Pay-to-Pay Fees to which it is neither entitled by law to add nor expressly authorized by the Uniform Mortgages constitutes a 'unfair' business practice . . . ."), ¶ 109.) Simply stating the disputed fee is

16

"immoral, unethical, oppressive, or unscrupulous" is insufficient to allege substantial aggravating factors required for an NCUDTPA claim. *See Lambert v. First Horizon Bank*, No. 3:19-CV-581-RJC-DCK, 2021 WL 3260073, at *9 (W.D.N.C. June 29, 2021), *report and recommendation adopted,* No. 3:19-CV-581-RJC-DCK, 2021 WL 3234624 (W.D.N.C. July 29, 2021).

Conclusory assertions that the disputed fee gives Pennymac an unfair competitive advantage that could lead to "a race to the bottom" and that Pennymac would still offer the delivery option even if it could not charge for it are simply too speculative to be afforded any weight.[6] *See Iqbal*, 556 U.S. at 663-64.

Also, "conjectural or hypothetical" claims about a potential for harm at an unspecified time in the future—as Plaintiff suggests will happen here—does not allege an "injury in fact." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court.").

---

[6] They are also untrue. Pennymac cannot operationally process and deliver debit card payments. If Pennymac is required to absorb the cost to build out the infrastructure to support this optional product, it may be forced to discontinue this option that its customers clearly want and are willing to pay for, just as they pay for FedEx or UPS.

82240697;2

**C. Plaintiff Fails to State an NCUDTPA Claim (Count III).**

Plaintiff's individual NCUDTPA claim is based on alleged violations of five statutes under North Carolina's Secure and Fair Enforcement (**SAFE**) Mortgage Licensing Act. (*See* Am. Compl. ¶ 113.) But the SAFE Act does not provide a private right of action. *See Campbell v. CitiMortgage, Inc.*, No. 1:11CV1017, 2014 WL 4924251, at *11 (M.D.N.C. Sept. 30, 2014), *report and recommendation adopted,* 2015 WL 127818 (M.D.N.C. Jan. 8, 2015).

And, while the violation of a regulatory statute designed to protect the public *may* constitute an unfair or deceptive practice prohibited by the NCUDTPA, Plaintiff has not shown the statutes he raised "specifically define[] and proscribe[] conduct which is unfair or deceptive within the meaning of [NCUDTPA]" or otherwise satisfy the three elements of an NCUDTPA claim. *Noble v. Hooters of Greenville (NC), LLC*, 199 N.C. App. 163, 170 (2009) (citing N.C. GEN. STAT. § 66-100(e)). For example, violations of §§ 45-93 (requiring servicers to comply with information requests) or 53-244.110 (requiring servicers to "[a]ct with reasonable skill, care, and diligence") (Am. Compl. ¶ 113) do not "possess[] the tendency or capacity to mislead, or create[] the likelihood of deception."

And even if the cited statutes could support an NCUDTPA claim, Plaintiff failed to state a violation of those statutes. "While a

82240697;2

plaintiff does not have to prove his or her claim in the complaint, the complaint does have to include sufficient factual allegations to make a claim plausible." *Edwards v. JPMorgan Chase Bank, N.A.*, No. 1:20-CV-128, 2020 WL 1814423, at *6 (M.D.N.C. Apr. 9, 2020).

### 1. **No § 45-93 violation.**

Plaintiff vaguely—and with no factual support—alleges Pennymac failed to timely process his loan modification application in violation of § 45-93. (Am. Compl. ¶ 113(a).) Section 45-93 provides a "servicer shall make reasonable attempts to comply with a borrower's request for information about the home loan account and to respond to any dispute initiated by the borrower about the loan account . . . ." The statute says nothing about timely processing a loan modification application. Section 45-93 is totally inapplicable.

### 2. **No § 53-244.110(3) violation.**

Section 53-244.110(3) requires servicers "[a]ct with reasonable skill, care, and diligence." Plaintiff says Pennymac violated this section by failing to timely and diligently process his loan modification application. (Am. Compl. ¶ 113(c).)

Plaintiff gives no basis for his claim that Pennymac's initial denial was not timely or diligent. To the contrary, he confirms Pennymac gave a reasoned decision for refusing to offer a modification. (*Id.* ¶ 73.)

82240697;2

### 3. No § 53-244.110(7) violation.

Plaintiff claims Pennymac failed to timely and diligently process his loan modification application in violation of § 53-224-110(7). (Am. Compl. ¶ 113(c).) But § 53-244.110(7) says nothing about processing loan modification applications. Instead, following a borrower's default, the statute requires servicers to "inform the borrower of the facts concerning the loan and the nature and extent of the delinquency or default and, if the borrower replies, to negotiate with the borrower, subject to the mortgage servicer's duties and obligations under the mortgage servicing contract, if any, to attempt a resolution or workout to the delinquency." N.C. GEN. STAT. § 53-244.110(7). Again, Pennymac did communicate with Plaintiff, explained why it was initially denying his modification request, and then offered him a modification anyway. (Am. Compl. ¶ 75.) Plaintiff has therefore not stated a § 53-244.110(7) violation.

### 4. No § 53-244.111(8) violation.

Section 53-244.111(8) prohibits servicers from engaging in "any transaction, practice, or course of business that is not in good faith or fair dealing or that constitutes a fraud upon any person in connection with the brokering or making or servicing of, or purchase or sale of, any mortgage loan." Plaintiff complains that Pennymac violated § 53-244.111(8) by advising him to stop

20

making loan payments and then failing to "timely and diligently" process his loan modification application. (Am. Compl. ¶ 113(d).)

To the extent Plaintiff alleges fraud, he must also meet the heightened particularly pleading standard under Rule 9(b), which he fails to do. Regardless, Plaintiff alleges no facts supporting that Pennymac acted in bad faith or unfairly. Plaintiff alleges he moved out of the property due to the mold, and Pennymac did offer him a modification, which he rejected. (Am. Compl. ¶¶ 67-76.) There is thus no bad faith.

### 5. No § 53-244.111(14) violation.

This section requires loan servicers to "comply with applicable State and federal laws and regulations related to mortgage lending or mortgage servicing." N.C. GEN. STAT. § 53-244.111(14). This is a catch-all claim, and Plaintiff fails to explain which applicable state and federal laws were or were not complied with. He alleges no violative conduct besides the insufficient loan modification processing allegations.

### D. Plaintiff Fails to State an NCDCA Claim (Count IV).

Plaintiff claims Pennymac violated NCDCA § 75-55(3) when it continued communicating with him after his attorney sent a representation letter. (Am. Compl. ¶¶ 118-119.) To state a § 75-55(3) claim, Plaintiff must establish Pennymac communicated with him in an attempt to collect a debt after being notified of

21

attorney representation. N.C. GEN. STAT. § 75-55; *see also Johnson*, 2013 WL 6058199, at *8 (summary judgment for plaintiff on NCDCA claim denied where defendant's conduct cannot reasonably be described as debt collection).

Plaintiff vaguely alleges Pennymac was engaged in debt collection (Am. Compl. ¶ 79), but the attached "examples" do not support this conclusion. Exhibit D is a "courtesy notice" to Plaintiff given with the express purpose "to inform [him] that [Pennymac] received [his] written request" and "does not require any action to be taken" by Plaintiff. (Am. Compl., Ex. D.) Boilerplate language on page 2 of the letter is not sufficient to transform the letter into statutorily-prohibited debt collection. *See Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107, 1114 (8th Cir. 2021) (letters with similar language were not debt collection because they did not try to induce payment); *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431-32 (6th Cir. 2015) (same).

Exhibit E relates to Pennymac's loan modification offer, which Plaintiff rejected. (Am. Compl. ¶ 75.) It is a loss mitigation offer rather than a demand for payment. *See Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998)(letter with prospective due date, not demanding payment, and containing warning that failure to pay pursuant to a forbearance agreement would render it void not debt collection under FDCPA).

22

82240697;2

Plaintiff has therefore failed to adequately allege any violation of the NCDCA, and this claim should be dismissed.

## IV. CONCLUSION

Plaintiff used a recycled complaint[7] to sue Pennymac over purported convenience fees Pennymac does not charge. But offering an optional payment delivery method for a fee is not unfair or deceptive debt collection in any event. The fees are separate, allowed transactions not incidental to the underlying debt. And calling them unfair or deceptive will only result in fewer options or increased borrowing costs for consumers, or both.

Pennymac respectfully requests the amended complaint be dismissed as outlined above.

Respectfully submitted this 16th day of July, 2025.

**AKERMAN LLP**

/s/ *Celia C. Falzone*
Celia C. Falzone (Pro Hac Vice)
Fla. Bar No. 0016439
E-Mail: celia.falzone@akerman.com;
E-Mail: emory.woodard@akerman.com
AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
T: (904) 798-3700; F: (904) 798-3730

---

[7] The complaint contains identical "pay-to-pay" fee allegations as raised in *Custer v. Dovenmuehle Mortg., Inc.*, No. 1:24-CV-306 (M.D.N.C. Apr. 10, 2024). The original complaint even referenced Dovenmuehle Mortgage ("DMI")and Custer. (Doc. 1 ¶¶ 3, 36, 108, 110 & p. 23.)

82240697;2

*-and-*

Marc J. Gottlieb, Esq. (Pro Hac Vice)
Florida Bar No. 827819
AKERMAN LLP
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301-2999
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
E-Mail: marc.gottlieb@akerman.com
E-Mail: joyce.gutierrez@akerman.com

*-and-*

Michael Newell, Esq.
Florida Bar No. 1049438
Three Brickell City Centre
98 Southeast 7th Street, Suite 1100
Miami, Florida 33131
Telephone: (305)374-5600
Facsimile: (305)374-5095
michael.newell@akerman.com
elena.hamilton@akerman.com

*-and-*

*/s/ Donald R. Pocock*
Donald R. Pocock, Esq.
NC Bar No. 29393
Akerman LLP
100 North Main Street, Suite 2425
Winston-Salem, NC 27101
Telephone: 336 296 7100
Fax: 336 296 7026
donald.pocock@akerman.com
*Counsel for Pennymac Loan Services, LLC*

24

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that this brief contains 5,070 words (not including material that may be excluded), as counted by the word-count feature in the word-processing software.

/s/Celia C. Falzone
Celia C. Falzone

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served the following counsel of record via the Court's CM/ECF system:

Katherine Marie Aizpuru
Robin Bleiweis
Tycko & Zavareei LLP
kaizpuru@tzlegal.com
rbleiweis@tzlegal.com
Benjamin M. Sheridan
Klein & Sheridan, LC
ben@kleinsheridan.com
*Counsel for Plaintiff*

This 16th day of July, 2025.

/s/ Celia C. Falzone
Celia C. Falzone

82240697;2