```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
           Civil Action No: 1:25-cv-00276-WO-LPA
```

CLAYTON BRADLEY WILLIAMS, III,

Plaintiff,

v.

PENNYMAC LOAN SERVICES, LLC,

Defendant.

**PENNYMAC'S REPLY MEMORANDUM SUPPORTING ITS
MOTION TO DISMISS THE AMENDED COMPLAINT**

**Table of Contents**

A.  FDCPA Cases Plaintiff Cites Are Not Persuasive............1

B.  No NCDCA Claim Alleged (Count I)..........................4

    1.  No unfair debt collection attempt....................4

    2.  Plaintiff formed a separate contract with third
        party................................................6

C.  No NCUDPTA Claim Alleged (Count II).......................7

    1.  NCUDPTA claim is precluded...........................7

    2.  Plaintiff has not met NCUDPTA generalized
        requirements.........................................8

    3.  No substantial aggravating factors...................9

D.  No NCUDPTA Claim Alleged (Count III).....................11

E.  No NCDCA Claim Alleged (Count IV)........................12

# Table of Authorities

**Page(s)**

**Cases**

*Alexander v. Account Discovery Sys., LLC*, No. 1:17-cv-04351,
    2018 WL 6521520 (N.D. Ga. Nov. 1, 2018) ........................5

*Alvarez v. LoanCare LLC*,
    2020 WL 5514410 (S.D. Fla. Aug. 28, 2020) ..................2,3

*Anderson v. Lab. Corp. of Am. Holdings*,
    No. 1:17-cv-193, 2019 WL 3858320 (M.D.N.C. Aug. 16, 2019)
    ..............................................................9

*Bailey v. Sec. Nat. Servicing Corp.*,
    154 F.3d 384 (7th Cir. 1998) ................................13

*Boczek v. Pentagon Fed. Credit Union*,
    725 F. Supp. 3d 542 (N.D. W. Va. Mar. 26, 2024) ..............2

*Brown v. Loancare, LLC*,
    No. 320CV00280FDWDSC, 2020 WL 7389407 (W.D.N.C. Dec. 16, 2020)
    ..............................................................8

*Campbell v. CitiMortgage, Inc.*,
    No. 1:11CV1017, 2014 WL 4924251 (M.D.N.C. Sept. 30, 2014)
    .............................................................11

*Crabtree v. Smith*,
    797 S.E.2d 710 (N.C. App. 2017) (unpublished decision) .......7

*Custer v. Dovenmuehle Mortg. Inc.*,
    No. 1:24-CV-306, 2024 WL 4528187 (M.D.N.C. Oct. 18, 2024)
    ..............................................................3

*Dees v. Nationstar Mortg. LLC*,
    496 F. Supp. 3d 1043 (S.D. Tex. 2020) ........................2

*DeSimone v. Select Portfolio Servicing*
    748 F. Supp. 2d 136 (E.D.N.Y. 2024) ..........................2

*Ellis v. Louisiana-Pacific Corp.*
    699 F.3d 778 (4th Cir. 2012) ..............................9,10

*Friday v. United Dominion Realty Tr., Inc.*,
  575 S.E.2d 532 (N.C. 2003) ....................................8

*Guthrie v. PHH Mortg. Corp.*,
  79 F.4th 328 (4th Cir. 2023) ................................13

*In re Hinson*,
  481 B.R. 364 (Bankr. E.D.N.C. 2012) .........................11

*Knapp v. PHH Mortg. Corp.*,
  2025 WL 1174947 (D. Or. Apr. 18, 2025) .......................2

*Koontz v. SN Servicing Corp.*,
  133 F.4th 320 (4th Cir. 2025) ...............................12

*Lee v. Main Accts., Inc.*,
  125 F.3d 855 (6th Cir. 1997) (unpublished table decision)
  .............................................................5

*Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290 (S.D. Ohio
  1996) .......................................................6

*Lembeck v. Arvest Cent. Mortg. Co.*,
  498 F. Supp. 3d 1134 (N.D. Cal. 2020) ........................2

*Mann v. National Asset Management Enterprises, Inc.*
  No. 04-1304, 2005 WL 8163297(C.D. Ill. Feb. 24, 2005 .........4

*Martindale v. MegaStar Fin. Corp.*,
  2021 WL 5331464 (E.D. Cal. Nov. 16, 2021) ....................2

*Reid v. Ayers*,
  531 S.E.2d 231 (N.C. App. 2000) ...........................1, 2

*Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88(4th Cir.
  2011) .......................................................4

*Robinson v. Deutsche Bank National Tr. Co.*,
  No. 5:12-CV-590-F, 2013 WL 1452933 (E.D.N.C. Apr. 9, 2013)
  ............................................................11

*Sheridan v. Ally Financial Inc.*,
  776 F. Supp. 3d 375 (S.D.W. Va. 2024) .....................5, 6

*SmithKline Beecham Corp. v. Abbott Laboratories*,
  No. 1:15CV360, 2017 WL 1051123 (M.D.N.C. Mar. 20, 2017)
  .........................................................10, 11

*Torliatt v. Ocwen Loan Servicing, LLC*,
   2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) ......................2

*Waddell v. U.S. Bank Nat'l Ass'n*,
   395 F. Supp. 3d 676 (E.D.N.C. 2019) ...........................8

*Williams v. Lakeview Loan Servicing*
    694 F. Supp. 3d 874 (S.D. Tex. 2023) .........................3

**Statutes**

FDCPA................................................................passim

N.C. GEN. STAT. § 75-50(2) ........................................4

N.C. GEN. STAT. § 75-55(2) .....................................3, 4

TEX. FIN. CODE ANN. § 392.303(a)(2) ...............................3

**Other Sources**

BLACK'S LAW DICTIONARY (12th ed. 2024) ............................3

Plaintiff hides behind distinguishable law and carefully omitted facts. Taken at his word, his complaint asks the Court to adopt a novel interpretation of North Carolina law that would only limit consumer choice and frustrate borrowers all over the state who freely choose to use alternative payment delivery options for a fee. There is no legal or public policy justification for limiting borrower options; the Court should decline to do so.

Plaintiff tries reviving his individual claims, accusing Pennymac of unfairly accelerating foreclosure of his distressed property and suggesting the Court cannot look at alleged communications to decide whether they are debt collection attempts. Neither theory holds up. Even if delayed, Pennymac offered a loan modification, negating any claim of unfair servicing. And, offering loss mitigation options at Plaintiff's request is not debt collection.

A.  **FDCPA Cases Plaintiff Cites Are Not Persuasive.**

Despite Plaintiff's suggestion that "expressly authorized" and "legally entitled" have the same meaning, no North Carolina court has said so. Nor are his cited cases determinative. North Carolina courts sometimes find FDCPA cases instructive in interpreting identical provisions, but never binding. *See Reid v. Ayers*, 531 S.E.2d 231, 263 (N.C. App. 2000). The *Reid* court found that the NCDCA and the FDCPA are sometimes materially different.

1

For example, the "debt collector" definition is different. *Reid*, 531 S.E.2d at 265. No FDCPA decision discusses the meaning of "legally entitled" as used in the NCDCA.

Plaintiff cites to *Alexander* and *Glover* for almost every argument supporting his claim convenience fees are unfair and deceptive. (Doc. 19 at 4, 5, 7, 9, 10, 12, 13, 14, 18.) These and the other cases Plaintiff cites interpreting the FDCPA or similar state statutes[1] are distinguishable for the reasons Pennymac stated. (Doc. 17 at 13-14.)

Plaintiff cites *DeSimone v. Select Portfolio Servicing* to counter Pennymac's argument convenience fees are not NCDCA debt collection. (Doc. 19 at 4.) But *DeSimone*'s conclusion was based on the same "any amount" language used only in the FDCPA. 748 F. Supp. 2d 136, 158 (E.D.N.Y. 2024). By contrast, the NCDCA requires the

---

[1] *See, e.g., Knapp v. PHH Mortg. Corp.*, 2025 WL 1174947, at *5-6 (D. Or. Apr. 18, 2025) (interpreting the phrases "expressly authorized" and "any amount" under Oregon statute); *Boczek v. Pentagon Fed. Credit Union*, 725 F. Supp. 3d 542, 548-49 (N.D.W. Va. Mar. 26, 2024) (interpreting West Virginia statute requiring fee be "expressly authorized"); *Martindale v. MegaStar Fin. Corp.*, 2021 WL 5331464, at *3 (E.D. Cal. Nov. 16, 2021) (interpreting California UCL, which "expressly incorporated" standard under FDCPA); *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1135-37 (N.D. Cal. 2020) (interpreting FDCPA); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596, at *4-5 (N.D. Cal. Apr. 17, 2020) (same); *Dees v. Nationstar Mortg. LLC*, 496 F. Supp. 3d 1043, 1046-48 (S.D. Tex. 2020) (interpreting Texas debt collection statute requiring fee be "expressly authorized"); *Alvarez v. LoanCare LLC*, 2020 WL 5514410, at *3 (S.D. Fla. Aug. 28, 2020) (interpreting "assertion of a legal right [defendant] knew did not exist" under Florida debt collection statute).

fee be "incidental to" the underlying debt before collection is unlawful. N.C. Gen. Stat. § 75-55(2).

*Williams v. Lakeview Loan Servicing*—cited to support the claim convenience fees are illegal—concerned whether a servicer could be held liable under the *Texas* debt collection statute when its subservicer charged pay-to-pay fees. 694 F. Supp. 3d 874, 885 (S.D. Tex. 2023). Like the FDCPA, the Texas statute prohibits fees that are not "expressly authorized." Tex. Fin. Code Ann. § 392.303(a)(2). The NCDCA requires only the debt collector be "legally entitled." N.C. Gen. Stat. § 75-55(2).

"Entitlement" means "[a] right to do, receive, or possess something either by law or by contractual arrangement." *Entitlement*, Black's Law Dictionary (12th ed. 2024); *see also Custer v. Dovenmuehle Mortg. Inc.*, No. 1:24-CV-306, 2024 WL 4528187, at *3 (M.D.N.C. Oct. 18, 2024) ("[I]n other cases where courts have addressed the issue of legal entitlement under § 75-55(2), they typically cite the statute or *contractual right* that provides the legal entitlement.")(emphasis added).

Carving out agreed-to contractual provisions from the meaning of "legally entitled" without the North Carolina Supreme Court's blessing would impermissibly expand North Carolina law. "[I]n a diversity case, a federal court should not interpret state law in a manner that may appear desirable to the federal court, but has

3

not been approved by the state whose law is at issue." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011) (declining to expand West Virginia statute in a way not yet adopted by state supreme court). No North Carolina appellate or supreme court authority has adopted Plaintiff's interpretation, so this Court should decline as well.

**B.   No NCDCA Claim Alleged (Count I).**

   **1.   No unfair debt collection attempt.**

In responding here, Plaintiff misstates Pennymac's argument and confuses the threshold issues. (Doc. 19 at 3-4.) Whether the convenience fee is a "debt" does matter because the fee is separate from—*i.e.*, not incidental to—the collection of the debt. Having made no demand Plaintiff owed the alleged $6.75 fee, this fee is not a debt. N.C. GEN. STAT. § 75-50(2) ("'Debt' means any obligation owed or due or alleged to be owed or due from a consumer."). Even if Pennymac collected it (which Pennymac disputes), collection of this fee does not trigger NCDCA protections.

The *Mann v. National Asset Management Enterprises, Inc.* court's finding a fee is not "collected" in the debt collection context if it is not demanded, No. 04-1304, 2005 WL 8163297, at *1-2 (C.D. Ill. Feb. 24, 2005), is instructive on this point. The recent appellate authority Plaintiff cites found optional fees were unlawful only because the FDCPA disallows collection of "any

4

82686245;4

Case 1:25-cv-00276-ICB-LPA   Document 20   Filed 08/20/25   Page 8 of 19

amount" and did not first require the fee be incidental to the debt. *See Alexander*, 23 F.4th at 379; *Glover*, 127 F.4th at 1289.

Plaintiff hopes to avoid the fact that Pennymac never charged him any fee to make a payment by alleging it did so through an "agent." (*See generally* Doc. 15; Doc. 19 at 14.) But his bald "agency" allegation is an insufficient legal conclusion the Court need not accept as true. (Doc 17 at 10.)

Plaintiff points to *Sheridan v. Ally Financial Inc.*, 776 F. Supp. 3d 375, 385 (S.D.W. Va. 2024), as instructive. (Doc. 19 at 15-16.) But, first, *Sheridan* is the only court to make this finding and relied on West Virginia apparent agency principles, which Plaintiff does not even attempt to show are similar to North Carolina law. All other cases addressing third-party delivery services hold no debt collection violation. *See, e.g.*, (Doc. 17 at 9); *Alexander v. Account Discovery Sys., LLC*, No. 1:17-cv-04351, 2018 WL 6521520, at *8 (N.D. Ga. Nov. 1, 2018) (where debt collector did not assess or retain the processing fees there was no FDCPA violation), *R&R adopted*, 2018 WL 6521481 (N.D. Ga. Nov. 27, 2018); *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290, 292 (S.D. Ohio 1996) (FDCPA claim dismissed because fee was charged by processor), *aff'd*, 135 F.3d 389 (6th Cir. 1998).

Second, unlike Plaintiff's complaint, the *Sheridan* plaintiff alleged more than just a legal conclusion to support the potential

5

82686245;4

Case 1:25-cv-00276-ICB-LPA    Document 20    Filed 08/20/25    Page 9 of 19

apparent agency. For example, the plaintiff alleged Ally "hired [third-party processors] to process monthly payments on its behalf," these processors are "advertised on Ally's website as 'Ways to pay,'" and "Ally provides the [third-party processor] the consumer payors' 'account number, address, and payment details . . . .'" *Sheridan*, 776 F. Supp. 3d at 385. There are no similar allegations here.

Third, even if he had tried, Plaintiff cannot allege facts supporting apparent agency. Pennymac does not purport to hire a "payment processor" to act as its collection agent. Instead, *borrowers* may choose to hire a third party to perform a debit card payment delivery service for a disclosed fee. Just like a borrower can choose to hire FedEx or UPS to deliver their check payments for a fee, they can choose to hire a disclosed third party to deliver their debit card payment for a fee. And, just like FedEx and UPS are not transformed into Pennymac agents merely because Pennymac informs borrowers they may utilize their delivery services, neither is a third-party debit card payment deliverer.

**2. Plaintiff formed a separate contract with third party.**

The Deed of Trust allows Pennymac to charge additional fees unless "expressly prohibited" by the Deed of Trust or "applicable law." (Doc. 17, Ex. 1 ¶ 15.) Neither the Deed of Trust nor applicable law "expressly prohibit" these fees.

6

82686245;4

Case 1:25-cv-00276-ICB-LPA   Document 20   Filed 08/20/25   Page 10 of 19

Plaintiff alleges borrowers choosing to use Pennymac's automated system or speak to a representative to make payments are charged a fee. (Doc. 15 ¶ 28.) As already said, Pennymac does not charge any fee to accept or make payments. At best, this is a reference to the Third-Party Fee. By virtue of agreeing to hire a third party to optionally deliver a payment by debit card, borrowers agree to pay a fee in exchange for the service rendered—delivering payment to Pennymac. This is a contract giving the third party legal entitlement to charge the subject fee.

Plaintiff's suggestion Pennymac is engaging in improper debt collection if it allows borrowers to contract with a third party for mortgage-related services (Doc. 19 at 8-9), is antithetical to promoting consumer choice. By Plaintiff's logic, lenders engage in improper debt collection when FedEx, UPS, or any other mail courier "collects" a fee to deliver borrowers' mortgage payments. This interpretation must be rejected.

C.  **No NCUDPTA Claim Alleged (Count II).**

1.  **NCUDPTA claim is precluded.**

NCUDPTA claims are precluded by the NCDCA. *Crabtree v. Smith*, 797 S.E.2d 710 (N.C. App. 2017) (unpublished decision) ("[E]ven assuming that plaintiffs sufficiently alleged violations of both, a successful claim for violation of [NCUDPTA] was necessarily precluded by plaintiffs' claim for prohibited acts by debt

7

collectors."); *Friday v. United Dominion Realty Tr., Inc.*, 575 S.E.2d 532, 536-37 (N.C. 2003) (explaining debt collector only subject to limited damages available under § 75-56). The Court should dismiss this redundant claim for that reason alone.

**2. Plaintiff has not met NCUDPTA generalized requirements.**

The Court should dismiss Plaintiff's NCUDPTA claim because Plaintiff does not allege an unfair and deceptive practice. First, the alleged convenience fees do not violate the NCDCA. *See supra* Section B. Second, optional fees are not otherwise unfair or deceptive. Plaintiff characterizes *Waddell* and *Brown* as "shallowly-reasoned" opinions because he disagrees with their conclusions. But *Waddell* used both common sense and cited to an analogous case thoroughly explaining why optional fees are not "immoral, unethical, oppressive, or unscrupulous." *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 685 (E.D.N.C. 2019) (citing *Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 999, 1005-06 (N.D. Ill. 2016)). The *Brown* court similarly explained optional fees, particularly when a plaintiff has alternate means of payment, are not unfair or deceptive. *Brown v. Loancare, LLC*, No. 320CV00280FDWDSC, 2020 WL 7389407, at *5 (W.D.N.C. Dec. 16, 2020). The Court should not ignore these reasoned opinions.

### 3. No substantial aggravating factors.

Even assuming Plaintiff's allegation that Pennymac charges the disputed fee or keeps any portion of it is true (it is not), not disclosing that fact is not deceptive. It is "not normally unfair or deceptive to charge a price—even an exorbitant one." *Anderson v. Lab. Corp. of Am. Holdings*, No. 1:17-cv-193, 2019 WL 3858320, at *7 (M.D.N.C. Aug. 16, 2019) (citing *Bumpers v. Community Bank of N. Va.*, 747 S.E.2d 220 (N.C. 2013)). Even if Plaintiff alleges "Pennymac or its agents" charged an "exorbitant" price, it is not unfair or deceptive unless accompanied by business practices that "trick and harass" customers to pay them. *Id.*

There is nothing alleged that comes even close to the conduct in *Anderson* suggesting Pennymac or its purported agents tricked or harassed customers into paying this fee. While Plaintiff alleges a fee is charged for using an "automated payment method" (Doc. 15 ¶ 28), he does not suggest the automated system or representative declined to disclose the fee or coerced him into paying the fee. *See, e.g.*, *Anderson*, 2019 WL 3858320, at *7. This is, at most, a contract dispute, where Plaintiff alleges a disclosed, agreed, and charged fee breached the parties' agreement.

The *Ellis v. Louisiana-Pacific Corp.* court explains why Plaintiff's NCUDPTA claim is simply a "re-couched" contract breach claim. 699 F.3d 778, 787 (4th Cir. 2012). In *Ellis*, a failure to

9

warn about an allegedly defective product, even if intentional, was not sufficiently unfair or deceptive to sustain a NCUDPTA claim. *Id.* *Ellis* supports Plaintiff cannot use magic words like "deception" to transform what is essentially just a claim Pennymac allegedly charged a fee not contractually authorized into an NCUDPTA claim. *Id.* at 787-88 (listing cases).

The conduct alleged here falls well short of the conduct in *SmithKline Beecham Corp. v. Abbott Laboratories,* No. 1:15CV360, 2017 WL 1051123 (M.D.N.C. Mar. 20, 2017). *SmithKline* was an antitrust case where the plaintiff alleged that the defendant, during and after contract negotiations with the plaintiff, hid its plans to destroy market competition (including the plaintiff's product), which undermined the value of the parties' agreement. *Id.* at *13. It was this antitrust-based theory that established the *SmithKline* plaintiff's NCUDPTA claim. *Id.* at *12.

The conduct alleged in *Anderson* and *SmithKline* is inapposite to the conduct alleged here, which does not go beyond a disagreement about a charged fee. *See id.* at *12 ("'[T]he fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others.'") (quoting *South Atl. Ltd. P'ship of*

*Tennessee, L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002)). Measured by anyone's yardstick, a small, disclosed, *optional* fee for an added service is not "unfair or deceptive."

**D.   No NCUDPTA Claim Alleged (Count III).**

Plaintiff points to *Campbell v. CitiMortgage, Inc.*, as a similar claim not dismissed under the NCUDPTA. But that plaintiff did not allege a loan modification application was processed, as promised, or denied for a legitimate reason. *Compare Campbell v. CitiMortgage, Inc.*, No. 1:11CV1017, 2014 WL 4924251, at *13 (M.D.N.C. Sept. 30, 2014) *with* (Doc. 15 ¶¶ 71, 73). The same is true in *Robinson v. Deutsche Bank National Trust Co.*, No. 5:12-CV-590-F, 2013 WL 1452933, at *19 (E.D.N.C. Apr. 9, 2013), where the plaintiff alleged the defendant gave false information about the modification process and foreclosure sale status, which is not alleged here. (Doc. 15 ¶ 71.) In *In re Hinson*, the defendant allegedly did not timely process a modification application and instituted foreclosure proceedings before the application was denied. 481 B.R. 364, 377 (Bankr. E.D.N.C. 2012).

Plaintiff accuses Pennymac of inducing nonpayment to accelerate a foreclosure (Doc. 19 at 20), but this alleged scheme does not make sense: Pennymac did offer a modification, which would have mitigated any foreclosure risk if accepted.

Even if the allegation Pennymac advised Plaintiff to stop

11

82686245;4

paying his mortgage was true (it is not), Plaintiff does not explain why offering a loan modification sooner would have prevented the "continued [] deteriorat[ion]" of the property. In fact, in the "nearly five months" between Pennymac's loan modification denial and the streamline offer, Plaintiff presumably had his saved monthly payments to apply to remediation. Despite Plaintiff's careful framing, Pennymac is not at fault for his failure to remediate his property.

**E.   No NCDCA Claim Alleged (Count IV).**

Conceding Exhibit D is not a debt collection attempt, Plaintiff tries to spin the innocuous loan modification offer communication attached as Exhibit E as a "demand for payment" akin to the one in *Koontz v. SN Servicing Corp.* Not so.

The communications in *Koontz* included language that the letters were "a step in the enforcement of a mortgage lien against [the] property," *i.e.*, a foreclosure threat. *Koontz v. SN Servicing Corp.*, 133 F.4th 320, 327 (4th Cir. 2025). The letters were also "demands for payment" because they informed the borrower of a late charge assessed to his account. *Id.* This, in combination with the FDCPA boilerplate "debt collector" language, amounted to a plausible allegation of debt collection activity. *Id.*

None of the additional "payment demand" language in the *Koontz* letters appear in the email reminder attached as Exhibit E. The

12

82686245;4

email does not demand payment, threaten (or even mention) foreclosure, or discuss any additional charges assessed to his account. It is clearly sent pursuant to the streamline modification offer requested by Plaintiff (Doc. 15 ¶ 75), which courts hold does not count as a debt collection attempt. *See Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998).

The *Guthrie* case does not turn the communications alleged here into a jury issue. *Guthrie* concerned payment demands made during phone calls to the borrower. *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328, 343 (4th Cir. 2023). By contrast, Plaintiff alleges post-representation letter debt collection attempts, and he attaches what he believes was the offending email to the complaint. No jury is needed to hold this is not a debt collection attempt.

## CONCLUSION

Pennymac respectfully requests the amended complaint be dismissed.

Respectfully submitted this 20th day of August, 2025.

                        **AKERMAN LLP**

                        */s/ Celia C. Falzone*
                        Celia C. Falzone (Pro Hac Vice)
                        Fla. Bar No. 0016439
                        E-Mail: celia.falzone@akerman.com;
                        E-Mail: emory.woodard@akerman.com
                        AKERMAN LLP
                        50 North Laura Street, Suite 3100
                        Jacksonville, FL 32202
                        T: (904) 798-3700; F: (904) 798-

3730

-and-

Marc J. Gottlieb, Esq. (Pro Hac Vice)
Florida Bar No. 827819
AKERMAN LLP
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301-2999
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
E-Mail: marc.gottlieb@akerman.com
E-Mail: joyce.gutierrez@akerman.com

-and-

Michael Newell, Esq.
Florida Bar No. 1049438
Three Brickell City Centre
98 Southeast 7th Street, Suite 1100
Miami, Florida 33131
Telephone: (305)374-5600
Facsimile: (305)374-5095
michael.newell@akerman.com
elena.hamilton@akerman.com

-and-

*/s/ Donald R. Pocock*
Donald R. Pocock, Esq.
NC Bar No. 29393
Akerman LLP
100 North Main Street, Suite 2425
Winston-Salem, NC 27101
Telephone: 336 296 7100
Fax: 336 296 7026
donald.pocock@akerman.com
*Counsel for Pennymac Loan Services, LLC*

14

82686245;4

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that this brief contains 2873 words (not including material that may be excluded), as counted by the word-count feature in the word-processing software.

*/s/Celia C. Falzone*
Celia C. Falzone

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served the following counsel of record via the Court's CM/ECF system:

Katherine Marie Aizpuru
Robin Bleiweis
Tycko & Zavareei LLP
kaizpuru@tzlegal.com
rbleiweis@tzlegal.com
Benjamin M. Sheridan
Klein & Sheridan, LC
ben@kleinsheridan.com
*Counsel for Plaintiff*

This 20th day of August, 2025.

*/s/ Celia C. Falzone*
Celia C. Falzone

82686245;4