IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CLAYTON BRADLEY WILLIAMS, III,

        Plaintiff,

v.                                        CIVIL ACTION NO. 1:25-cv-00276

PENNYMAC LOAN SERVICES, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiff's First Amended Complaint* (Document 15), *Defendant Pennymac Loan Services, LLC's Motion to Dismiss Plaintiff's Amended Complaint* (Document 16), *Pennymac's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint* (Document 17), the *Plaintiff's Memorandum in Opposition to Motion to Dismiss* (Document 19), and *Pennymac's Reply Memorandum Supporting Its Motion to Dismiss the Amended Complaint* (Document 20), as well as the *Stipulation of Partial Voluntary Dismissal* (Document 23) and the *Plaintiff's Suggestion of Subsequently Decided Authority in Opposition to Motion to Dismiss* (Documents 22 & 25). For the reasons stated herein, the Court finds that the motion to dismiss should be denied.

**FACTUAL ALLEGATIONS**

The Plaintiff, Clayton Bradley Williams, III, brought this claim against Defendant Pennymac Loan Services, LLC, on behalf of himself and all others similarly situated. Pennymac is a loan servicer that "buys mortgage servicing rights or contracts to sub-service mortgage

servicing with a primary servicer." (Am. Cmpl. at ¶ 18.) Its role typically involves collecting payments and associated tasks, including charging fees, enforcing the mortgage, and initiating foreclosure. Borrowers have no control over the loan servicing agreements entered into by lenders, and those agreements do not impact borrowers' payment obligations, which are established by their mortgages and related agreements.

Mr. Williams closed on a home in July 2023 and began making mortgage payments. Pennymac is the servicer for Mr. Williams' mortgage. Pennymac or its agents "have charged borrowers a Pay-to-Pay fee of up to $6.75 for using the automated payment method and up to $15.00 per transaction when speaking to a representative." (*Id.* at ¶ 28.) These fees are imposed when borrowers choose to make payments through an automated online system or over the phone, rather than by mailing a check or using the automated ACH system to have the monthly payment automatically debited from an account. The costs associated with processing such payments are less than the amounts charged to borrowers, and less than the costs associated with processing payments by paper check. Mr. Williams' mortgage, with standard contractual language contained in "Uniform Mortgages," does not authorize Pay-to-Pay fees. Borrowers cannot choose their loan servicer and are therefore unable to select a servicer that offers their preferred payment method without a fee.

Pennymac or its agents charged Mr. Williams $6.75 in May 2024, when he paid his mortgage with a debit card. The Plaintiff alleges that this charge violated the NCDCA (North Carolina Debt Collection Act) and NCUDTPA (North Carolina Unfair and Deceptive Trade Practices Act) because "the mortgage agreement does not expressly allow Pennymac to charge Pay-to-Pay Fees, and Pennymac's collection was an attempt to charge Plaintiff for Pennymac's

2

services and costs." (*Id.* at ¶ 54.) Mr. Williams made a written pre-suit demand on February 21, 2025, informing Pennymac that the Pay-to-Pay fees are unlawful. Pennymac did not cease charging such fees.

In addition to the allegedly unlawful fees, Mr. Williams contends that he sought a loan modification due to mold that rendered the home uninhabitable. Pennymac advised him to stop making payments while he was evaluated for a loan modification but ultimately refused to offer the modification because he was not residing in the home. His home deteriorated further before Pennymac eventually offered a modification, and it was too late to repair the home. Pennymac also continued to communicate with Mr. Williams after he notified the company that he was represented by counsel.

Mr. Williams brings his claims on behalf of himself and a proposed class, defined as follows:

> All persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced or subserviced by Pennymac, (3) and who paid a Pay-to-Pay Fee to Pennymac or its agent(s) when making a payment on their mortgage by debit card, telephone, internet, or an interactive voice response system during the applicable statutes of limitations through the date a class is certified.

(*Id.* at ¶ 80.)

The Plaintiff brings the following causes of action: Count I – Violation of the North Carolina Debt Collection Act, on behalf of the Plaintiff and the Class, and Count II – Violation of the North Carolina Unfair and Deceptive Trade Practices Act, on behalf of the Plaintiff and the Class. The Plaintiff also brought individual claims in Counts III and IV, but those claims have been dismissed by the parties following a confidential settlement agreement.

3

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or

4

arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Pennymac urges the Court to dismiss the Plaintiff's claims as a matter of law. It contends that it does not charge or profit from the fees at issue, which it asserts are paid to "an independent third party to process and deliver [the Plaintiff's] mortgage payment to Pennymac using Plaintiff's debit card." (Def.'s Mem. at 4-5.) Pennymac further argues that there are no factual allegations supporting the assertion that it, or its agent(s), charged the fees at issue. In addition, Pennymac argues that the Pay-to-Pay fees do not constitute unfair debt collection because free payment methods are offered and Pennymac does not collect or receive the fees. It contends that the fee is

not incidental to the principal debt, but a "voluntary fee paid by Plaintiff directly to the third party as part of a separate transaction agreed to by Plaintiff in exchange for an added, optional delivery service." (*Id.* at 11.) It also argues that the fee is legally permissible because the Deed of Trust permits Pennymac to charge fees that are not "expressly prohibited" by either the Deed of Trust or "applicable law." (*Id.* at 12.) It contends that the "alleged practice of charging customers fully disclosed fees for optional payment delivery methods is not unfair or deceptive." (*Id.* at 15.)

The Plaintiff argues that Pay-to-Pay fees have been found by other courts, as well as regulatory agencies, to violate consumer protection and debt collection laws. He contends that the Pay-to-Pay fees are charged in connection with debt collection because they are charged "as a condition of Pennymac accepting electronic payments on the debt Pennymac is collecting." (Pl.'s Resp. at 4.) Similarly, he argues that the weight of the authority holds that Pay-to-Pay fees are incidental to the principal debt. He contends that Pennymac is not legally entitled to charge the fees because there is no affirmative authorization for doing so, despite the lack of an explicit prohibition. In addition, he cites precedent finding that similar fees are prohibited by the federal Fair Debt Collection Practices Act, and reasons that the provision of the Uniform Mortgage barring fees prohibited by applicable law therefore applies to the Pay-to-Pay fees. He argues that the fees are unconscionable. In response to Pennymac's argument that the fees are charged by a third party, the Plaintiff argues that "Pennymac may not contract with a third party to accomplish what the law prohibits, and its argument relies on facts outside the pleadings." (*Id.* at 14.) The Plaintiff further contends that he has adequately pled substantial aggravating circumstances for purposes of the North Carolina Unfair and Deceptive Trade Practices Act claim.

*A. Agency*

Pennymac's argument that it cannot be liable because the fees were collected by a third party relates to both causes of action. Under North Carolina law, "[t]wo factors are essential in establishing an agency relationship: (1) [t]he agent must be authorized to act for the principal; and (2) [t]he principal must exercise control over the agent." *Leiber v. Arboretum Joint Venture, LLC*, 702 S.E.2d 805, 811 (N.C. Ct. App. 2010) (quoting *Johnson v. Amethyst Corp.*, 463 S.E.2d 397, 400 (N.C. Ct. App. 1995)). Whether an agency relationship exists is typically a factual question for the jury, although it can be resolved by the court if "only one inference can be drawn from the facts." *Id.*; *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659–60 (4th Cir. 2019).

The Plaintiff alleges that Pennymac or its agent charges the Pay-to-Pay fees. He has alleged that the fees are charged "[e]ach time a mortgage borrower whose loan is serviced by PennyMac makes a loan payment using its automated system or through a representative." (Am. Compl. at ¶ 28.) The Plaintiff alleges that "PennyMac illegally pockets the difference" between the fees and the much lower actual costs of processing debit card payments. (*Id.* at ¶ 29.) The Court finds those allegations sufficient, at this stage, to state a claim that Pennymac exercises control over the collection of the Pay-to-Pay fees. *Sheridan v. Ally Fin., Inc.*, 776 F. Supp. 3d 375, 385 (S.D.W. Va. 2024) (finding similar allegations sufficient to plausibly allege an agency claim, or in the alternative, finding discovery to be warranted). Pennymac's denial of those factual allegations is, of course, irrelevant at the pleadings stage. Pennymac's comparison between the Pay-to-Pay fees and mailing costs when customers choose to send a check via the United States Postal Service (USPS), FedEx, or other mailing services is unavailing. Customers, rather than Pennymac, control which mail service to use and what costs to incur. There is also no

7

allegation of a relationship between Pennymac and any mailing service. Therefore, the Court finds that Pennymac's argument that it cannot be liable because the fees were charged by a third party must be rejected.

### B. NCDCA

The North Carolina Debt Collection Act (NCDCA), N.C. Gen. State § 75-55(2) provides:

> No debt collector shall collect or attempt to collect any debt by use of any unconscionable means. Such means include…Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee, or expense incidental to the principal debt unless legally entitled to such fee or charge.

N.C. Gen. Stat. § 75-55(2). Prior to stating a claim for unfair debt collection, plaintiffs must satisfy three threshold determinations: "First, the obligation owed must be a 'debt'; second, the one owing the obligation must be a 'consumer'; and third, the one trying to collect the obligation must be a 'debt collector.'" *Reid v. Ayers*, 531 S.E.2d 231, 233 (N.C. Ct. App. 2000) (citing N.C. Gen. Stat. § 75-50(1)-(3)). In addition, "all NCDCA claims require: (4) the debt collector to commit an unfair act; (5) that affects commerce; and (6) that proximately injures the consumer." *Onnipauper LLC v. Dunston*, 892 S.E.2d 487, 491 (N.C. Ct. App. 2023), *writ denied, review denied*, 900 S.E.2d 674 (N.C. 2024). "Consumer means any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes." N.C. Gen Stat. § 75-50(1). "Debt means any obligation owed or due or alleged to be owed or due from a consumer." *Id*. at § 75-50(2). "Debt collector means any person engaging, directly or indirectly, in debt collection from a consumer…." *Id*. at § 75-50(3). "North Carolina courts generally look to the Fair Debt Collection Practices Act ("FDCPA") as non-binding guidance for interpreting the

NCDCA." *Brown v. Loancare, LLC*, No. 320CV00280FDWDSC, 2020 WL 7389407, at *3 (W.D.N.C. Dec. 16, 2020).

The Plaintiff has sufficiently alleged that he is a consumer, as he purchased property secured by a mortgage. He has also alleged that he owes a debt, as the mortgage requires him to make monthly payments. Pennymac, as the loan servicer for his mortgage, is a debt collector. Thus, the Plaintiff has satisfied the preliminary criteria.

The Defendant argues that the fees are not "incidental" to the mortgage, but instead are a separate charge imposed by a third party under a separate agreement. The Fourth Circuit considered Pay-to-Pay fees recently. Although the question of whether the fee was incidental was not necessary to the ultimate holding, the court stated: "we have a hard time seeing how the convenience fee is not incidental to the debt. Without the mortgage payment, there is of course no convenience fee." *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 377 at fn. 2 (4th Cir. 2022). The Plaintiff alleges that the fees are charged when making a payment online or by phone. Therefore, under the plain language of the statute, they constitute fees incidental to the debt.

The Defendant further argues that it is legally entitled to charge Pay-to-Pay fees. It does not identify any legal provision expressly permitting such fees but instead takes the position that absent an explicit prohibition, it is legally entitled to charge the fees. The Middle District of North Carolina, like the Fourth Circuit in *Alexander*, has rejected the argument that "the phrase 'legally entitled' [means] anything not explicitly prohibited by law" as inconsistent with "the purpose of the NCDCA, which uses broad language over several statutory provisions to protect consumers and debtors." *Custer v. Dovenmuehle Mortg., Inc.*, No. 1:24-CV-306, 2024 WL 4528187, at *3

9

(M.D.N.C. Oct. 18, 2024) (Eagles, C.J.); *Alexander*, 23 F.4th at 377 (finding that statutory language barring fees not 'permitted by law' "requires affirmative sanction or approval").[1] The case primarily relied upon by Pennymac, *Waddell v. U.S. Bank Nat'l Ass'n*, found that the defendant, as a national bank, was "legally entitled under federal law to charge non-interest fees such as the pay-by-phone fee" pursuant to a banking regulation permitting national banks to charge customers "non-interest charges and fees." 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019); 12 C.F.R. § 7.4002(a), (b)(2). Pennymac does not suggest that the banking regulation relied upon in *Waddell* is applicable here.[2] Thus, *Waddell*, even if correctly decided, cannot assist Pennymac because it does not stand for the proposition that fees are permitted under the NCDCA absent an express legal prohibition elsewhere.

The Plaintiff has also adequately alleged that the fees are unfair. He alleges that the fees far exceed the actual costs of processing online payments. He further asserts that Pennymac, as a loan servicer, receives a servicing fee that compensates it for ts services in collecting payments and otherwise interacting with borrowers, and the Pay-to-Pay fees represent double-charging. *See Custer*, 2024 WL 4528187, at *4 (finding similar factual allegations sufficient to overcome a motion to dismiss and rejecting the argument that the fee cannot be unfair because it is optional and free payment methods are offered). Therefore, the Court finds that the motion to dismiss the Plaintiff's NCDCA claim should be denied.

---

1 Indeed, it would be rather illogical for North Carolina to include a provision in the NCDCA that prohibits collection of fees only if those fees are *already* prohibited under another law.

2 The District Court for the District of Maryland recently considered the reasoning in *Waddell* and found it unpersuasive, noting that "the court found that 12 C.F.R. § 7.4002 "authorized" the charging of convenience fees, but it does not appear to have considered the impact of 12 C.F.R. § 7.4008(e)(4), which makes clear that state debt collection laws may further restrict the ability of federal savings banks to charge 'non-interest charges or fees.'" *Baxter v. AmeriHome Mortg. Co., LLC*, 617 F. Supp. 3d 346, 355 (D. Md. 2022) (further noting that *Waddell* predates *Alexander*, wherein the Fourth Circuit provided guidance on the interpretation of similar statutory language.)

### C. NCUDTPA

The North Carolina Unfair and Deceptive Trade Practices Act (NCUDTPA) "creates a cause of action for consumers injured by 'unfair or deceptive acts or practices in or affecting commerce.'" *Waddell*, 395 F. Supp. 3d at 684 (quoting N.C. Gen. Stat. § 75-1.1(a)). "In order to establish a *prima facie,* claim for unfair trade practices, a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226 (N.C. 2013) (quoting *Dalton v. Camp,* 548 S.E.2d 704, 711 (N.C. 2001)). "If a plaintiff proves that a debt collector violated a provision of the NCDCA, then that violation is an unfair trade practice under § 75-1.1." *Custer*, 2024 WL 4528187, at *4.

As found above, the Plaintiff stated a claim under Chapter 75, and the factual allegations supporting his NCDCA claim also support his NCUDTPA claim. In addition, he has alleged that Pennymac's actions are deceptive because it does not inform borrowers that the actual cost of processing payments is much less than the Pay-to-Pay fee charged to consumers, nor does it inform borrowers that the fee is not permitted by the deed of trust. The Plaintiff emphasizes that borrowers cannot choose their loan servicer, and so borrowers who prefer to pay using methods for which Pennymac or its agents charge an excessive fee cannot select a loan servicer that accepts their preferred payment method for no additional cost. The Plaintiff also alleges that various regulatory agencies have informed Pennymac of the illegality of Pay-to-Pay fees, and Pennymac persists in charging these fees. The Court finds those allegations sufficient to state a claim for violation of the NCUDTPA, and the motion to dismiss Count Two will be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Pennymac Loan Services, LLC's Motion to Dismiss Plaintiff's Amended Complaint* (Document 16) be **DENIED**. Per the parties' *Stipulation of Partial Voluntary Dismissal* (Document 23), the Court further **ORDERS** that Counts Three and Four be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: December 1, 2025

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA